UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY DEAN COURON,

    Petitioner,

v.	Case No. 2:10-cv-122
    HON. R. ALLAN EDGAR
BARRY DAVIS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner, Randy Dean Couron, filed this petition for writ of habeas corpus challenging his convictions for two counts of first degree criminal sexual conduct. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. Petitioner argues that his trial counsel was ineffective and the Michigan Court of Appeals unreasonably applied the law to Petitioner's ineffective assistance of counsel claims.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is

whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the facts are not in dispute, but that the Michigan Court of Appeals unreasonably applied the law to his ineffective assistance of counsel claims. Petitioner asserts that defense counsel failed to investigate the case, failed to pursue the victim's counseling records, which contradicted her trial testimony, and failed to provide a defense. Petitioner argues that counsel erred by simply putting Petitioner on the witness stand to make this a "he said, she said" issue.

Petitioner argues that if a proper investigation had taken place, the result of the trial would have been different. Petitioner argues that:

> Had the investigation taken place, the trial would have had the following components: 1) the complainant's credibility could have been undermined by her history of mental difficulties, by her friendly phone call, by her e-mail, by her delayed reporting, by the family animosity, and by her vow to make it right for another family member whose allegations of sexual abuse had not be vindicated; 2) the Petitioner's credibility would not have been undermined because the

microphone incident would never have occurred, i.e., the trial attorney would have informed the trial court that the defense was "I didn't do it" as opposed to the "complainant was never at my home;" 3) an expert would have been called who could have testified about the complainant's unnatural use of language that would normally be used by a therapist and about the entire subject of implanted memories; 4) the therapist could have been interviewed to determine what protocols were used and whether her testimony might have been useful to the defense; 5) Bruce Couron, the Petitioner's son would have testified about the e-mail and his contacts with the complainant over the years. The foundation would be laid during cross-examination of the complainant; 6) Bruce Couron would have testified about the family dynamics, the animosity, and the reasons why the family might be out to get the Petitioner; 7) Robyn Couron and the Petitioner would have testified about the friendly phone call between the Petitioner and the complainant because a proper foundation would have been laid during cross-examination; and 8) the defense would have been a combination of a figment of the imagination defense and implanted memories which caused the complainant to believe events had occurred when they had not. Expert testimony would provide the support for that defense.

Petitioner's reply brief, Docket #25, at 10-11.

The Michigan Court of Appeals remanded this case for the trial court to conduct an evidentiary hearing on Petitioner's ineffective assistance of counsel claims. The trial court held a two day *Ginther*[1] hearing and then denied Petitioner's motion for a new trial. The Michigan Court of Appeals affirmed the trial court and the Michigan Supreme Court denied leave to review. The Michigan Court of Appeals explained the reason that Petitioner's ineffective assistance of counsel claims lack merit. The court stated:

### B. Legal Standards

To prevail on a claim of ineffective assistance of counsel, a defendant must prove constitutionally deficient performance and prejudice. To satisfy the first component, a defendant must show that "counsel made errors so serious that counsel was not functioning as the

---

[1]*People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973).

'counsel' guaranteed the defendant by the Sixth Amendment." The second component requires the defendant to show "the existence of a reasonable probability that, but for the counsel's error, the result of the proceeding would have been different." A defendant must satisfy both components to prevail. A defendant also "must overcome a strong presumption that counsel's performance constituted sound trial strategy." "[T]his Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." A defendant bears the burden of establishing the factual predicates for his claims.

### C. Applying The Standards

#### 1. Failure To Prevent Spontaneous Statement

Couron argues that trial counsel provided ineffective assistance when he created circumstances during a pretrial hearing that resulted in Couron making a statement that the prosecutor overheard and subsequently used at trial to undermine Couron's credibility. Couron made a voluntary and spontaneous statement during a public hearing in a courtroom that was loud enough to be overheard. Consequently, it was Couron's failure to take reasonable precautions to keep his remark confidential, not any act or omission on the part of trial counsel, that created the opportunity for later use of his statement for impeachment purposes at trial. We do not fault trial counsel for failing to anticipate and prevent Couron from making a spontaneous statement.

#### 2. Failure To Object To Impeachment

Couron argues that defense counsel was ineffective for failing to object to the prosecutor's use of the spontaneous statement to impeach him. However, in its ruling after the *Ginther* hearing, the trial court explained that it allowed the prosecutor to use the statement, despite defense counsel's objection raised during a bench conference. Thus, Couron has failed to establish the factual predicate for his claim that defense counsel was ineffective for failing to object.

#### 3. Failure To Accept Offer of Adjournment

Couron argues that defense counsel was ineffective because he did not accept the trial court's offer of an adjournment when the prosecution made a late disclosure of evidence and submitted a revised witness list. According to Couron, because of this decision defense counsel did not have time to interview the witnesses or

review the complainant's journal. The record shows that the newly presented witnesses were not a surprise to defense counsel and that their testimony merely corroborated the complainant's testimony that she had been at Couron's home at the time of the sexual abuse. The record also shows that defense counsel reviewed the journal before the beginning of the trial. In addition, at the evidentiary hearing, defense counsel testified that he was capable of being prepared for trial even without the adjournment and that he would have accepted the adjournment if he felt he would be unprepared for trial. Because defense counsel testified that he was prepared for trial and because the contents of the journal and witnesses' testimony did not contain any unexpected evidence, Couron is unable to overcome the strong presumption that defense counsel's actions constituted trial strategy.

### 4. Failure To Obtain Evidence and Expert

Couron maintains that defense counsel was ineffective for failing to request the complainant's medical records and for failing to secure the assistance of an expert. Couron claims that if defense counsel requested these records and if defense counsel consulted an expert, then defense counsel would have been able to argue the complainant's allegations were a result of improper therapy techniques. But Couron presented no evidence at the *Ginther* hearing to show that such an investigation would have revealed any beneficial information. Couron failed to seek an in camera review of the complainant's psychiatric records. Although Couron consulted an expert on appeal, he still failed to establish that a valid defense existed on the basis of the complainant being subjected to suggestive therapy techniques. Accordingly, Couron has failed to establish the factual predicate for his claim.

### 5. Failure To Investigate

Couron contends that defense counsel failed to investigate certain family animosity that could have been used as a defense and failed to lay a proper foundation to introduce evidence of family animosity. Contrary to Couron's representation, the record indicates that during the trial defense counsel repeatedly raised the animosity in Couron's family as a reason for why the complainant may have fabricated her claims. Thus, Couron has failed to establish a factual predicate for his claim that defense counsel provided deficient representation.

> 6. Failure To Lay Proper Evidentiary Foundation
>
> Couron alleges that defense counsel failed to lay a proper foundation to admit the contents of a friendly telephone conversation between the complainant and Couron that transpired shortly before the complainant accused Couron of sexual assault. The record indicates that defense counsel questioned the complainant and Couron about the telephone call. Through this testimony, the jury heard that the telephone [call] occurred because the complainant returned Couron's initial telephone call, that the telephone call was long and friendly, and that the complainant made no accusations about the sexual abuse at that time. Thus, Couron is unable to establish the factual predicate for his claim that the defense counsel was deficient for failing to present this information.
>
> 7. Failure To Call Witness
>
> Couron maintains that defense counsel was deficient for failing to call Couron's son as a witness. "The decision whether to call witnesses is a matter of trial strategy which can constitute ineffective assistance only when the failure to do so deprives the defendant of a substantial defense." Couron has not demonstrated what substantial defense he was deprived of when defense counsel decided to not have Couron's son testify. At the most, the son's testimony would have established that animosity existed between various family members and that the complainant had sent him an e-mail detailing her mental health problems before she made the allegations. Because the evidence of family animosity and the e-mail were presented at trial through other witnesses, the son's testimony would only have been cumulative. Thus, the defense counsel's decision was trial strategy and did not deprive Couron of a substantial defense.
>
> In sum, we conclude that the trial court did not abuse its discretion when it denied Couron's motion for a new trial.

Michigan Court of Appeals' Opinion, Docket #22, at 2-5.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed

to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make

a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

Petitioner relies on *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008), to support his argument that the victim's mental health records should have been obtained by counsel prior to trial. In *Brown*, counsel had evidence from the victim's own psychologist prior to trial that the records might contain relevant evidence. In this case, unlike in *Brown,* the trial court held a *Ginther* hearing on this issue. There was no such evidence available to counsel that could indicate that it was unreasonable for counsel to not seek the victim's counseling records. In fact, there was no evidence available to counsel to make a threshold showing that the counseling records could be relevant to the defense. There needed to be something more than simply a desire to attack the victim's credibility. Therefore, it was not unreasonable for the Michigan Court of Appeals to deny Petitioner's claim.

It is clear that the Michigan Court of Appeals applied the proper legal standard in analyzing Petitioner's ineffective assistance of counsel claims. Moreover, Petitioner was provided effective representation and counsel explained his reasons for defending the case in the manner that he chose and not pursing the defense that Petitioner now argues should have been pursued. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                 /s/ Timothy P. Greeley
                                                TIMOTHY P. GREELEY
                                                UNITED STATES MAGISTRATE JUDGE

Dated:   April 16, 2013